1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BEVERLY A. WALKER,

11          Plaintiff,                    No. CIV S-06-1478 GGH

12       vs.

13   MICHAEL J. ASTRUE,            <u>ORDER</u>
     Commissioner of Social Security,[1]
14
            Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18   ("DIB") under Title II of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

19   Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary

20   Judgment is granted.  The Clerk is directed to enter judgment for the Commissioner.

21   \\\\\

22   \\\\\

23   \\\\\

24   _____

25       [1]   On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
26   § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
     action.

                                         1

BACKGROUND

Plaintiff, born August 9, 1946, applied for disability benefits on October 28, 2002. (Tr. at 33.)  Plaintiff alleged she was unable to work since September 17, 2001, due to diabetic neuropathy and degenerative arthritis of the back and knees.  (Tr. at 26.)  On November 24, 2003, plaintiff amended her alleged disability onset date to August 9, 2001.  (Tr. at 26.)  In a decision dated February 21, 2004, administrative law judge ("ALJ") Richard D. Wurdeman determined that plaintiff was not disabled.[2]  The ALJ made the following findings:

> 1.    Claimant protectively filed an application for a period of disability insurance benefits on October 28, 2002, alleging disability from September 17, 2001.  In a brief dated November 24, 2003, claimant, through her attorney,

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

amended her alleged disability onset date to August 9, 2001.

2.  Claimant met the disability insured status requirements of the Act on August 9, 2001, her amended alleged onset date, and continues to meet those requirements through December 31, 2005.

3.  The claimant has not performed SGA [substantial gainful activity] since August 9, 2001.

4.  The medical evidence establishes that claimant has the severe impairments of diabetes with secondary depression.

5.  Claimant's mild degenerative arthritis of the back and knees, high blood pressure, high cholesterol, gastroenteritis and asthma do not represent severe impairments.

6.  Claimant's severe impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P of Social Security Administrative Regulation No. 4.

7.  Claimant has an RFC for a range of work at the light exertional level with the ability to stand/walk for a maximum of four hours and the need for a sit-stand option. Claimant also requires four to six unscheduled short (three to five minute) breaks per day.  Finally, claimant is precluded from work with high quota expectations or rigid deadlines or confrontational contact with the public.

8.  Claimant's subjective complaints are not fully credible.

9.  Claimant is presently a 57-year-old individual with two years of college and vocationally relevant past work experience as a general clerk, receptionist, employment training specialist, case aide and job placement specialist during the last 15 relevant years.

10. Considering the above RFC, claimant can perform her past relevant work as a general clerk.

11. Pursuant to 20 C.F.R. § 404.1520(e), claimant is not and has not been under a "disability" as that term is defined in the Social Security Act, as amended, at any time through the date of this decision.

(Tr. at 30-31.)

\\\\\

\\\\\

3

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physician; B.  Whether the ALJ Properly Evaluated Plaintiff's Credibility; C.  Whether the ALJ Properly Considered Plaintiff's Non-Severe Impairments; D. Whether the ALJ Failed to Pose a Complete Hypothetical to the Vocational Expert; and E. Whether New Material Submitted the Appeals Council Was Properly Evaluated.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A.  Treating Physician's Opinion

Plaintiff contends that the ALJ erred in rejecting the opinion of plaintiff's treating physician, Dr. David Crawford, M.D.  Plaintiff fails to specify which portions of Dr. Crawford's opinion she believes were improperly rejected.  Because the ALJ accepted some aspects of Dr. Crawford's opinion and rejected others, the court will assume that plaintiff objects to all rejected portions.

The weight given to medical opinions depends, in part, on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[3]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

---

[3]  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[4]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

2  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

3  insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4  The ALJ accorded partial weight to Dr. Crawford's opinion reflected in a

5  September 17, 2003, "Diabetes Mellitus Residual Functional Capacity Questionnaire."  In this

6  questionnaire, Dr. Crawford opined that plaintiff could stand and walk for four hours, with

7  multiple short breaks, but had limitations in her ability to concentrate and handle stress.  (Tr. at

8  28, 29.)  The ALJ credited this assessment, but gave little weight to Dr. Crawford's opinion

9  regarding plaintiff's postural and environmental limitations and likely absenteeism (predicting

10  absences of three or more days per month due to impairments or treatment).  (Tr. at 28, 29, 232.)

11  The ALJ found these portions of Dr. Crawford's opinion to be "inordinately based upon

12  claimant's subjective complaints" and unsupported by the medical record.  (Tr. at 28-29.)

13  With regard to the postural limitations, Dr. Crawford opined that plaintiff could

14  never climb ladders, rarely climb stairs, and rarely stoop, bend or crouch (Tr. at 231).[5]  This

15  opinion was contradicted by consultative examining physician, Dr. Jaskaran Momi, M.D.  Dr.

16  Momi evaluated plaintiff on February 22, 2003, and reported some tenderness in the lower

17  lumbar spine and over the lumbosacral joints, but found that plaintiff had a normal range of

18  motion, and normal results from straight leg raise testing.  He found a normal range of motion in

19  plaintiff's knee joints, with no tenderness to palpation.  (Tr. at 144.)  He also found that plaintiff

20  had full motor strength in her upper and lower extremities, as well as normal reflexes.  (Tr. at

21  144-45.)  Based on that examination, Dr. Momi opined that plaintiff had no limitations in her

22  ability to bend, stoop, crouch, crawl, climb or kneel.  (Tr. at 145.)

23  Plaintiff strenuously argues that the ALJ should not have relied on Dr. Momi's

24  opinion because his examination was conducted without first reviewing plaintiff's medical

25

26  [5]  Postural limitations affect a claimant's ability to stoop, climb, crawl or crouch.  See 20 C.F.R. § 416.969a(c)(vi).

6

1   records.  Plaintiff points to 20 C.F.R. § 404.1517, which provides that the Commissioner "will

2   give [a consultative] examiner any necessary background information about [claimant's]

3   condition."  However, the Ninth Circuit has held that where the opinion of an examining

4   physician rests on independent, objective tests and clinical findings, that opinion is substantial

5   evidence.  <u>Andrews</u>, 53 F.3d at 1041.  Here, Dr. Momi's opinion was based on his independent

6   examination of plaintiff, including tests of plaintiff's reflexes, strength, and range of motion.

7   (Tr. at 143-45.)

8          Plaintiff has a point, usually a winning one, but in this case, other circumstances

9   indicate that any failure to receive and review records was harmless.  The Commissioner,

10   generally a vigorous advocate for the use of objective signs and tests, cannot seriously contend

11   that a physician's review of available x-rays and other diagnostic indicators would not universally

12   be performed by any physician legitimately attempting to assess the seriousness of arthritis.  That

13   is why the time and expense is made to acquire such signs and tests in the first place.

14          However, Dr. Momi's assessment is consistent with the March and June 2003

15   opinions of the non-examining Disability Determination Services ("DDS") medical advisors,

16   who did review plaintiff's medical records and based their assessments thereon.  Those records

17   included x-rays of plaintiff's knees and lumbar spine showing only mild degenerative changes,

18   and revealed relatively little treatment for this condition. (Tr. at 160, 162-63, 192, 247-48, 265-

19   66.)  The DDS physicians, like Dr. Momi, assessed no postural limitations on plaintiff's ability to

20   work.  (Tr. at 28, 149, 154.)

21          Significantly, the vocational expert testified that the postural demands of a general

22   clerk, if any, would be insignificant.  (Tr. at 340.)  Accordingly, even if it were error to reject the

23   postural limitations, it would have little effect on the ALJ's conclusion that plaintiff could

24   perform her past relevant work as a general clerk.  Moreover, the U.S. Department of Labor's

25   Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles

26   provides that stooping, climbing, crawling, crouching and kneeling are "not present" in the job of

1   general clerk.   Selected Characteristics of Occupations Defined in the Revised Dictionary of

2   Occupational Titles, 348 (1993).

3             Based on the foregoing, the ALJ's reasoning that plaintiff's back and knee

4   arthritis did not minimally impact her ability to work was sufficiently specific, legitimate and

5   supported by substantial evidence in the record.

6             The ALJ also rejected environmental limitations assessed by Dr. Crawford based

7   on evidence that plaintiff's asthma was inconsequential.  (Tr. at 28-29.)  Dr. Crawford opined

8   that plaintiff should avoid "concentrated exposure" to extreme cold and heat, high humidity,

9   wetness, perfumes, fumes, odors, gases, and dust.  (Tr. at 232.)  He likewise opined that plaintiff

10  should avoid "even moderate exposure" to cigarette smoke and solvents and cleaners.  (Tr. at

11  232.)  This opinion was contradicted by Dr. Momi's report that plaintiff had no environmental

12  limitations on her ability to work.  (Tr. at 145.)

13            The ALJ rejected the limitations suggested by Dr. Crawford, noting that plaintiff's

14  asthma was not severe, and citing Dr. Momi's report that plaintiff's in-office lung and chest

15  exams were normal.  Indeed, the record does show that plaintiff's asthma was "quiescent" (Tr. at

16  258), and that she had stopped taking medication for it prior to the hearing.  In a September 2003

17  form, plaintiff reported no current medications for asthma, and testified at the hearing that she no

18  longer used an inhaler.  (Tr. at 125-26, 129, 307.)  Based on this evidence, the ALJ rejected the

19  environmental limitations suggested by Dr. Crawford.  His reasons for doing so were specific and

20  legitimate, and supported by substantial evidence in the record.

21            Curiously, plaintiff does not explain how this alleged error by the ALJ would

22  impact his finding that plaintiff could do her past relevant work as a general clerk.  It seems

23  highly unlikely that these environmental limitations, if credited, would preclude her from such

24  work.  See Selected Characteristics of Occupations Defined in the Revised Dictionary of

25  Occupational Titles, 348 (1993) (providing that the job of general clerk has no exposure to

26  extreme cold and heat, humidity, wetness, toxic or caustic chemicals, or other environmental

8

conditions). Furthermore, Dr. Crawford's opinion that plaintiff should avoid even moderate exposure to cigarette smoke seems to completely ignore plaintiff's third-of-a-pack per day smoking habit.  (See, e.g., Tr. at 143.)

Finally, the ALJ rejected Dr. Crawford's unexplained opinion that plaintiff's conditions (and treatment therefor) would likely cause her to miss three or more days per month. (Tr. at 29, 232.)  The ALJ found this opinion to be unsupported by the medical evidence, and concluded that Dr. Crawford was advocating for plaintiff's pursuit of benefits.  (Tr. at 29.)  More specifically, the ALJ noted that Dr. Crawford indicated he only saw plaintiff "one to two times a year," and that the record showed "relatively infrequent symptomatic treatment for claimant's various ailments."  (Tr. at 29, 229.)

Although plaintiff does not specifically attack the ALJ's reasoning on this point, the court nonetheless finds it to be supported by the record.  Many of plaintiff's medical records concern test results from biopsies of calcifications in plaintiff's breasts.  (See, e.g., Tr. at 164-70, 186-89, 194-97, 204-08.)  Plaintiff never alleged this as an impairment, and testified that it was not disabling, and only required x-rays every six months.  (Tr. at 309.)  The remaining bulk of hospitalization records concern plaintiff's treatment for abdominal pains in December 2001 and April and May of 2004.  (Tr. at 134-40, 247-58.)  Plaintiff's readmission to the hospital in May 2004, appears, in part, due to her failure to comply with prescribed medication.  (Tr. at 250.) Otherwise, plaintiff's treatment records show visits to the doctor much less frequently than three times per month.  Furthermore, to the extent the ALJ found that Dr. Crawford's opinion in this regard was advocative, he was entitled to reject it.  See Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (ALJ may reject medical opinion where doctors acts as an advocate in claimant's pursuit of benefits).  In sum, the ALJ provided sufficient reasons supported by substantial evidence in the record to reject Dr. Crawford's unsupported opinion regarding plaintiff's likely absenteeism, and postural and environmental limitations.

\\\\\\

1    B. Credibility

2         Plaintiff contends that the ALJ improperly rejected plaintiff's subjective

3    allegations as not fully credible.

4         The ALJ determines whether a disability applicant is credible, and the court defers

5    to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

6    94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

7    credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

8    Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

9    supported by "a specific, cogent reason for the disbelief").

10        In evaluating whether subjective complaints are credible, the ALJ should first

11   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

12   F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

13   solely because objective medical evidence does not quantify them.  Id. at 345-46.  If the record

14   contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

15   then considers the nature of the alleged symptoms, including aggravating factors, medication,

16   treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

17   applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

18   inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

19   and (3) daily activities.[6]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

20   SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

21   and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

22   between testimony and conduct, may also be relevant.  Light v. Social Security Administration,

23

24        [6] Daily activities which consume a substantial part of an applicants day are relevant.
     "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25   activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
     any way detract from her credibility as to her overall disability.  One does not need to be utterly
26   incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
     (quotation and citation omitted).

119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found that plaintiff was only partially credible.  Specifically, he noted that plaintiff's complaints of disabling orthopedic pain were not supported by clinical findings, which showed only mild degenerative changes in plaintiff's knees and lumbar spine.  (Tr. at 29, 129.)  He also noted that plaintiff's complaints were inconsistent with her daily activities, which included driving her grandchild to school, visiting with friends, and using a stationary bicycle to exercise.  (Tr. at 29, 327-28.)

Significantly, the ALJ pointed to the inconsistency between Dr. Crawford's statement that plaintiff could walk one and a half miles without rest or severe pain, and plaintiff's statement that she was limited to walking only one or two blocks before she was forced to call somebody to come and get her.  (Tr. at 29, 230, 312.)  When confronted with Dr. Crawford's statement later in the hearing, plaintiff admitted that she had been walking that far earlier in the year.  (Tr. at 327-28.)  Such inconsistencies in a plaintiff's testimony provide a valid basis for an adverse credibility finding.  See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as . . . any inconsistent statements in her testimony."); see also Light v. SSA, 119 F.3d 789, 793 (9th Cir. 1997) (an ALJ may disbelieve a claimant if there are inconsistencies between the claimant's testimony about his daily activities and his testimony about the nature, effect, or severity of his symptoms).  These were specific, convincing reasons for an adverse credibility determination.

\\\\\\

1    C.  Consideration of Plaintiff's Impairments

2          Plaintiff's argument regarding the severity of her impairments is unclear.  Plaintiff

3    seems to attack both the ALJ's determination that some of plaintiff's impairments were not

4    severe, and his purported failure to consider the combined effect of all plaintiff's impairments in

5    determining plaintiff's residual functional capacity ("RFC").  Although the ALJ determined that

6    several of plaintiff's alleged impairments (i.e., mild degenerative arthritis of the back and knees,

7    high blood pressure, high cholesterol, gastroenteritis and asthma) were "not severe," plaintiff

8    only points to evidence suggesting that her asthma was more severe than determined.

9    Accordingly, the court only addresses that impairment in reviewing the propriety of the ALJ's

10   step-two determination.

11         At the second step of the disability analysis, an impairment is not severe only if it

12   "would have no more than a minimal effect on an individual's ability to work, even if the

13   individual's age, education, or work experience were specifically considered."  SSR 85-28.  The

14   purpose of step two is to identify claimants whose medical impairment is so slight that it is

15   unlikely they would be disabled even if age, education, and experience were taken into account.

16   Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).

17         In determining that plaintiff's asthma was "not severe," the ALJ relied on Dr.

18   Momi's February 2003 report.  Dr. Momi evaluated plaintiff and found that her chest and lungs

19   were "normal" and "clear."  (Tr. at 28, 143, 145.)  Although plaintiff reported use of an inhaler

20   during that exam, at the hearing, she testified that Dr. Crawford had taken her off of it. (Tr. 142,

21   307.)  Further, in a September 2003 form completed prior to the hearing, plaintiff reported no

22   current medications for asthma.  (Tr. at 28, 125-26, 129.)  Indeed, the record reveals little to no

23   treatment for asthma, and in fact shows that this condition was "quiescent," or causing no trouble

24   or symptoms.  (See, e.g., Tr. at 161, 163, 176, 248, 258, 266.)

25         This evidence undermines plaintiff's assertion that she received "frequent

26   treatment for . . . asthma."  Plaintiff's Brief, at 10:9-16.  In support of this contention, plaintiff

1   cites prescriptions for "promethazine hydrochloride and codeine phosphate syrup on October 4,

2   2003, December 10, 2003, January 21, 2004, April 8, 2004, and May 12, 2004." (Tr. at 278-79.)

3   This unexplained list of prescriptions is ambiguous, at best.  Notably, as cited above, the record

4   shows that plaintiff rarely saw her doctors in connection with asthma complaints.  Furthermore,

5   promethazine has multiple indications, including the prevention or reduction of nausea, which

6   the record shows plaintiff was suffering around some of the cited dates.  (Tr. at 247, 252, 255,

7   258-60); see Physicians' Desk Reference, 3440 (61st ed. 2007) (indicated for allergic rhinitis,

8   prevention and control of nausea and vomiting, and as a sedative, among other things); see also,

9   Dorland's Illustrated Medical Dictionary, 1363 (27th ed. 1988).  Notably, in the September 2003

10  form, plaintiff listed current medications including "phenergan suppositories" for "nausea." (Tr.

11  at 126.)  "Phenergan" is the brand name for "promethazine HCL."  See Physicians' Desk

12  Reference, at 3440.

13              The list of prescriptions cited by plaintiff does little to establish that plaintiff's

14  asthma would more than minimally impact her ability to perform work activities.  Even if the

15  court were to find that the ALJ erred in not designating her asthma as severe, plaintiff does not

16  argue that this condition would impact her ability to do her past relevant work as a general office

17  clerk.  Regardless, the court finds the ALJ's did not err by finding plaintiff's asthma not severe.

18              Next, plaintiff makes the vague assertion that the ALJ failed to consider the

19  combined effect of all of plaintiff's impairments on her ability to work.  Plaintiff correctly cites

20  Social Security Ruling 96-8p for the proposition that in assessing a claimant's RFC, the ALJ

21  must "consider *limitations and restrictions imposed by all of an individual's impairments*, even

22  those that are not severe."  SSR 96-8p (emphasis added); Celaya v. Halter, 332 F.3d 1177, 1182

23  (9th Cir. 2003).

24              However, plaintiff does not specify whether or how any limitations imposed by

25  her non-severe impairments, in combination or alone, would affect her ability to work.  Indeed,

26  in her brief, plaintiff makes no allegation regarding any restrictions or limitation flowing from

13

1  her "not severe" impairments.  Neither does she allege how any such restriction would affect her

2  ability to do her past relevant work as a general clerk.  The court will not guess at what

3  limitations plaintiff thinks the ALJ failed to consider, nor will it take on plaintiff's burden of

4  showing she is incapable of performing her past relevant work.  Macri v. Chater, 93 F.3d 540,

5  543 (9th Cir. 1996) (The claimant has the burden of proving that an impairment prevents him

6  from performing his past work).

7        D.  Hypothetical to the Vocational Expert

8        Plaintiff argues that the ALJ failed to include "critical non-exertional as well as

9  environmental restrictions" in the hypothetical posed to the vocational expert.  Plaintiff does not

10  elaborate on what "critical non-exertional restrictions" she believes were omitted from the

11  hypothetical.

12        Hypothetical questions posed to a vocational expert must set out all the

13  substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

14  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

15  limitations, the expert's testimony as to jobs in the national economy which the claimant can

16  perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

17  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

18  interpretations of the evidence, the hypothetical which ultimately serves as the basis for the

19  ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey

20  v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988);[7] but see Matthews v. Shalala, 10 F.3d 678 (9th Cir.

21  1993) (the failure to include all of a claimant's limitations in a hypothetical may be harmless

22  error if the ALJ's conclusions are supported by other reliable evidence).

23  \\\\\

24  _____

25        [7]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a
hypothetical question propounded by a claimant's counsel."  Magallanes, 881 F.2d at 756.
26  Rather the ALJ is free to accept or reject these restrictions as long as they are supported by
substantial evidence.  Id., at 756-57.

1          Here, the ALJ concluded that plaintiff had the residual functional capacity for

2    work at a light exertional level with the ability to stand/walk for a maximum of four hours, the

3    need for a sit-stand option, and four to six unscheduled short breaks per day.  The ALJ also

4    precluded plaintiff from work with high quota expectations, rigid deadlines or confrontational

5    contact with the public.  (Tr. at 30.)  Plaintiff does not challenge these findings.  Rather, she

6    seems to allege that the ALJ's hypothetical should have included the postural and environmental

7    limitations suggested by Dr. Crawford.  As discussed above, the ALJ did not err by declining to

8    credit those limitations.  The hypothetical posed to the expert reflected the limitations determined

9    by the ALJ, and those limitations were supported by substantial evidence in the record.  (Tr. at

10   335-37.)  The ALJ was not required to pose hypotheticals to the vocational expert which

11   reflected limitations and functional restrictions he properly rejected.  Accordingly, the ALJ did

12   not err.

13          E.  Whether New Material Submitted the Appeals Council Was Properly Evaluated

14          Finally, plaintiff argues that new and material evidence submitted to the Appeals

15   Council was not properly evaluated.[8]  The Appeals Council denied plaintiff's request for review

16   on May 11, 2006, and wrote that it considered the newly admitted evidence, but found it did not

17   provide a basis for changing the ALJ's decision.  (Tr. at 5.)  Relying on Ramirez v. Shalala, 8

18   F.3d 1449, 1454 (9th Cir. 1993), plaintiff argues that the Appeals Council erred by failing to set

19   forth "specific reasons to support its findings and conclusions" with regard to the new evidence.

20   Plaintiff's Brief, at 11:24-26.

21          Contrary to plaintiff's assertion, the decision in Ramirez does not mandate that the

22   Appeals Council articulate specific reasons for its determination that additional evidence fails to

23   provide a basis for reversing the ALJ's decision.  Rather, the court in that case simply concluded

24   that the both the ALJ and the Appeals Council erred by failing to find that the claimant met the

25

26          [8] Plaintiff identifies this evidence as appearing at Tr. 245-77.

15

1 requirements for diagnosis 12.04, as established in new documents submitted by claimant's

2 treating psychiatrist. Ramirez, 8 F.3d at 1454.

3          Here, as in Ramirez, the Appeals Council "declined to review" the ALJ's decision

4 after considering the case on the merits, examining the entire record, including the additional

5 material, and concluding that the ALJ's decision was proper.  If the Appeals Council denies

6 review, the decision of the ALJ is the final decision of the Secretary.  If the Appeals Council

7 accepts review and renders a decision, the final decision of the Secretary is that of the Appeals

8 Council. 20 C.F.R. § 404.981; Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988).  The

9 situation here is a hybrid of the usual situation where the Appeals Council has denied review, but

10 has nevertheless ruled upon the newly submitted evidence.  In these circumstances, the district

11 court reviews the decision of the ALJ as supplemented by the Appeal Council's comments about

12 the new evidence.  This "new" evidence is part of the record before the court.[9]  See Harman v.

13 Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials are properly considered where

14 the Appeals Council addressed them in the context of denying claimant's request for review).

15          The relevant documents consist largely of treatment notes concerning plaintiff's

16 gastroenteritis, a condition alleged prior to the hearing.  However, the court finds that these

17 records fail to undermine the ALJ's determination regarding plaintiff's RFC or her ability to

18 perform her past relevant work.  In fact, plaintiff does not argue that these documents undermine

19 the ALJ's decision.  Rather, she simply argues that the Appeals Council erred by failing to

20 articulate a specific reason for finding that the new documents did not justify reversal.  Remand

21 to the Appeals Council for a clearer articulation of its reasoning would provide plaintiff with

22 little relief.  Based on the foregoing, the court finds the Appeals Council did not err.

23 \\\\\

24

25          [9] The Commissioner is therefore incorrect in arguing that this court should not consider
26 these documents because they are "additional treatment notes" concerning plaintiff's medical
history after the ALJ's decision.  Defendant's Brief, at 7:23-28.

1   CONCLUSION

2         The court finds the ALJ's assessment is supported by substantial evidence in the

3   record and based on the proper legal standards.

4         Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the

5   Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed

6   to enter Judgment for the Commissioner.

7   DATED:8/30/07

8                             /s/ Gregory G. Hollows

9                             U.S. Magistrate Judge

10   walker.1478.ss.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26